IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CRAIG ALFORD, | No. 1:20-CV-01787 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| LEA BAYLOR, *et al.*, | |
| Defendants. | |

MEMORANDUM OPINION

AUGUST 9, 2022

Presently before the Court is Plaintiff Craig Alford's *pro se* amended complaint under 42 U.S.C. § 1983,[1] alleging constitutional violations during his pretrial detention at Monroe County Correctional Facility (MCCF) in Stroudsburg, Pennsylvania. He claims that both his criminal arraignment and his pretrial detainment exceeded statutorily permissible time limits. Defendants move to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court will grant in part and deny in part Defendants' motion to dismiss.

---

[1] Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

I.   **BACKGROUND**

This civil action was originally commenced on October 1, 2020, by eight plaintiffs[2] who—at that time—were pretrial detainees at MCCF. The complaint was styled as a "class action," seeking to bring collective Section 1983 claims against four defendants—three prison officials at MCCF and the Monroe County prothonotary (or clerk of court). The gravamen of the complaint was that the plaintiffs were being unlawfully held in pretrial detention and without arraignment longer than permitted by various Pennsylvania Rules of Criminal Procedure, thus violating the plaintiffs' constitutional rights.[3] According to the allegations, some plaintiffs were being held in pretrial detention longer than allowed after the filing of a criminal complaint (in violation of Rule 600), and others were being held in pretrial detention too long without formal arraignment (in violation of Rule 571).[4] The plaintiffs specifically noted that they were not "seeking release [from] custody," only monetary damages for the purported illegal pretrial confinement.[5]

On October 13, 2020, the Court[6] dismissed the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), finding that the plaintiffs' Section 1983 claims were

---

[2]   Those plaintiffs were Jhon Lora, Luis Medina, Craig Alford, Justin Coate, Christopher J. Klement, Miguel Eduardo Rosario, Howard Wolfe, and Damaon Webster. *See* Doc. 1 at 1, 2.
[3]   Doc. 1 at 5-9.
[4]   *See id.* at 7.
[5]   *Id.* at 9.
[6]   This case was previously assigned to the Honorable John E. Jones III. It was transferred to the undersigned following remand by the United States Court of Appeals for the Third Circuit and Judge Jones' August 1, 2021 retirement from the federal bench.

barred by the Supreme Court's decision in *Heck v. Humphrey*.[7]  Only one plaintiff, Craig Alford, appealed.[8]  The United States Court of Appeals for the Third Circuit vacated the October 13, 2020 judgment and remanded for further proceedings as to Alford's Section 1983 claim involving failure to timely arraign, holding only that it was not barred by the favorable termination rule in *Heck v. Humphrey*.[9]

On remand, this Court reviewed the complaint to determine if it stated a claim for relief absent any *Heck v. Humphrey* bar.  On December 8, 2021, the Court dismissed the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.[10]  Specifically, the Court determined that the complaint did not plead facts plausibly establishing how the named Defendants had violated the Fourteenth Amendment.[11]  The Court dismissed the complaint but granted leave to amend.[12]

In late December 2021, Alford filed an amended complaint.  He again attempted to file on his own behalf and on the behalf of other plaintiffs, but those other plaintiffs were dismissed from this action on January 14, 2022 for failure to

---

[7]  512 U.S. 477 (1994).
[8]  *See* Doc. 51.  As the Third Circuit noted, only Alford signed the notice of appeal and thus only Alford's claim was considered by the panel.  *See Lora v. Lt. Baylor*, 853 F. App'x 801, 802 n.1 (3d Cir. 2021) (mem.) (nonprecedential).
[9]  *Lora*, 853 F. App'x at 803 & n.4.
[10]  *See generally* Docs. 68, 69.
[11]  *See* Doc. 68 at 4-5.
[12]  Doc. 69.  The Court additionally explained that, "[t]o the extent that the Third Circuit's decision vacating the October 13, 2020 judgment applies to all plaintiffs and not just Alford (who alone successfully appealed dismissal of his Section 1983 claim), the same reasoning provided herein requires dismissal of those plaintiffs' constitutional tort claims as well." Doc. 68 at 5 n.19.

file amended complaints.[13]  In that January 14 dismissal order, the Court also explicitly noted that "non-lawyer *pro se* litigants [like Alford] cannot represent other parties in federal court,"[14] and that because the "amended complaint is signed only by Alford[,] it applies only to his own claims."[15]

Defendants now move to dismiss the amended complaint, arguing, in part, that Alford has not corrected the deficiencies identified in the Court's December 8, 2021 dismissal.[16]  The motion is fully briefed and ripe for disposition.

## II.   STANDARD OF REVIEW

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[17]  The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff.[18]  In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as

---

[13] *See* Doc. 76.
[14] *Id.* (citing *In re Cook*, 589 F. App'x 44, 46 (3d Cir. 2014) (nonprecedential) (citing 28 U.S.C. § 1654; *Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 882-83 (3d Cir. 1991))).
[15] *Id.*
[16] Defendants also reassert their argument under *Heck v. Humphrey* now that Alford has been convicted and sentenced.  *See* Doc. 80 at 4-5.  However, the Court does not agree that *Heck* applies to bar Alford's pretrial detention claims, as he is not attempting to impugn his conviction but rather seeks damages for the allegedly unlawful pretrial detention.
[17] *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996).
[18] *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008).

undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.[19]

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry.[20] At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim."[21] Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded.[22] Finally, the court must review the presumed-truthful allegations "and then determine whether they plausibly give rise to an entitlement to relief."[23] Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[24]

Because Alford proceeds *pro se*, his pleadings are to be liberally construed and his amended complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]"[25] This is particularly true when the *pro se* litigant, like Alford, is incarcerated.[26]

---

[19] *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).
[20] *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted).
[21] *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (alterations in original)).
[22] *Id.* (quoting *Iqbal*, 556 U.S. at 679).
[23] *Id.* (quoting *Iqbal*, 556 U.S. at 679).
[24] *Iqbal*, 556 U.S. at 681.
[25] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).
[26] *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).

### III. DISCUSSION

As in the original complaint, Alford contends that his Eighth and Fourteenth Amendment rights were violated when he was held in pretrial detention without timely arraignment or release on nominal bail before trial.[27] And, as previously explained,[28] because Alford is alleging a *pretrial* deprivation by state actors, his claim implicates only the Fourteenth Amendment, not the Eighth.[29]

Alford avers that the following defendants are liable for his allegedly unlawful pretrial detainment: Garry Haidle, Warden of Monroe County Correctional Facility; Gregory Armond, a Sergeant at Monroe County Correctional Facility; Lea Baylor,[30] "Director" at Monroe County Correctional Facility; and George Warden, the Monroe County Prothonotary and Clerk of Courts.[31] He sues all Defendants in their individual and official capacities.[32]

#### A. Alleged Violations of Pennsylvania Rules of Criminal Procedure

Pennsylvania Rule of Criminal Procedure 571 generally governs the arraignment process.[33] In particular, Rule 571(A) states, "Unless otherwise

---

[27] Alford also cursorily mentions the Sixth Amendment, but he fails to develop this claim at all. It is possible that Alford is attempting to implicate the speedy trial clause of the Sixth Amendment, but because Alford does not include plausible allegations of a speedy trial violation, the Court will not address such a claim.

[28] *See* Doc. 68 at 3.

[29] *See Jacobs v. Cumberland County*, 8 F.4th 187, 193-94 (3d Cir. 2021); *Thomas v. Cumberland County*, 749 F.3d 217, 223 n.4 (3d Cir. 2014).

[30] In earlier litigation in this case, defendant Lea Baylor was misidentified as "Lt. Baylor."

[31] *See* Doc. 73 ¶¶ 4-7; http://www.monroecountypa.gov/Dept/Prothonotary/Pages/default.aspx (last visited July 28, 2022).

[32] Doc. 73 ¶ 8.

[33] *See* PA. R. CRIM. P. 571; 42 PA. CONS. STAT. § 8703.

provided by local court rule, or postponed by the court for cause shown, arraignment shall take place no later than 10 days after the information has been filed."[34] Alford alleges that his criminal information was filed on June 29, 2020; that, according to Rule 571(A), he should have been arraigned by July 9, 2020; and that he was not arraigned until September 2, 2020.[35]

Pennsylvania Rule of Criminal Procedure 600 establishes, among other things, the timing for criminal trials and specific limitations on pretrial detainment.[36] Pursuant to Rule 600(B)(1), upon which Alford relies, "Except in cases in which the defendant is not entitled to release on bail as provided by law, no defendant shall be held in pretrial incarceration in excess of . . . 180 days from the date on which the complaint is filed."[37] Alford alleges that he "was confined" on June 7, 2020 (he does not state when the criminal complaint was filed); that, according to Rule 600(B)(1), he should have been tried or released from pretrial detention by December 7, 2020[38]; and that he was not released and did not receive

---

[34] PA. R. CRIM. P. 571(A). The Comment to Rule 571 also provides that "[u]nder paragraph (A), in addition to other instances of "cause shown" for delaying the arraignment, the arraignment may be delayed when the defendant is unavailable for arraignment within the 10-day period after the information is filed."

[35] Doc. 73 ¶ 9.

[36] *See generally* PA. R. CRIM. P. 600.

[37] PA. R. CRIM. P. 600(B)(1). The opening proviso of Rule 600(B)(1) does not appear to apply to Alford, as his state-court criminal docket shows that, on June 7, 2020, his bail was set at $100,000. *See Commonwealth v. Alford*, No. CP-45-CR-0000929-2020 (Pa. Ct. Com. Pl., Monroe Cnty.). The Court may rely on matters of public record, like state-court criminal dockets, when considering a Rule 12(b)(6) motion to dismiss. *See Mayer*, 605 F.3d at 230.

[38] The Court notes that 180 days from June 7, 2020, is actually December 4, 2020.

a trial until May 10, 2021.[39]  Alford further asserts that he pursued relief under Rule 600(D)(2), which provides that the remedy for violating the time limits established by Rule 600(B) is that, any time before trial, counsel or a *pro se* defendant may file a written motion requesting that the defendant "be released on nominal bail."[40]

### B. Theory of Liability

Alford alleges that he notified the prison-official Defendants through the formal grievance process about the alleged excessive detention and the violations of the Pennsylvania Rules of Criminal Procedure.[41]  He claims that the prison officials simply told him to contact his criminal defense attorney "instead of investigating these serious constitutional violations."[42]  As to defendant George Warden—the county prothonotary (or clerk of courts)—Alford asserts that he filed a petition for a writ of habeas corpus and a motion for relief under Rule 600(D), but that Warden "failed to act and ignored [his] request for relief and did not file on the docket sheet [his] motion for relief."[43]  Alford further alleges that Warden "is to keep track of all confined and their court appearances" and that he "failed to react after [being] thoroughly notified of [Alford's] confinement/complaints."[44]

---

[39] Doc. 73 ¶ 9.
[40] *See id.*; PA. R. CRIM. P. 600(D)(2).
[41] Doc. 73 ¶ 10.
[42] *Id.*
[43] *Id.* ¶ 11.
[44] *Id.*

To establish liability for Defendants, Alford primarily relies on a single case from the United States Court of Appeals for the Ninth Circuit: *Oviatt ex rel. Waugh v. Pearce*, 954 F.2d 1470 (9th Cir. 1992).[45] In *Oviatt*, the plaintiff was arrested on a bench warrant on March 8, 1986, and was scheduled for arraignment on March 10.[46] However, due to a clerical error (the court clerk who prepared the docket sheet for March 10 had inadvertently failed to place the plaintiff's name on the arraignment docket), the plaintiff spent 114 days in jail without an arraignment, a bail hearing, or a trial.[47] The plaintiff sued the county and the county's sheriff (as a policymaker), alleging, *inter alia*, violations of 42 U.S.C. § 1983, and he eventually won a jury verdict.[48]

As relevant to the instant case, the county defendants appealed the district court's denial of their motion for judgment notwithstanding the verdict on the Section 1983 claims, contending that the plaintiff had "failed to establish a policy of deliberate indifference and the deprivation of a constitutional right."[49] The Ninth Circuit rejected these arguments.

---

[45] *See* Doc. 73 ¶ 12; Doc. 73-1; Doc. 83-1 at 2, 5. Alford also briefly mentions *Sample v. Diecks*, 885 F.2d 1099 (3d Cir. 1989). That case, however, dealt with an Eighth Amendment Section 1983 claim regarding allegations by a prisoner-plaintiff that he was wrongfully incarcerated more than nine months beyond the expiration of his sentence. *See Sample*, 885 F.2d at 1102. *Sample*, therefore, is largely inapposite to the case at bar, although it does appear to establish the elements for wrongful detention claims like those raised by Alford. *See id.* at 1109-10.
[46] *Oviatt*, 954 F.2d at 1473.
[47] *Id.*
[48] *Id.* at 1472.
[49] *Id.* at 1473.

First, the panel found that the plaintiff had a protected liberty interest "in freedom from incarceration without speedy pretrial procedures" created by state statutes governing criminal proceedings.[50] The court then determined what process was due under the Fourteenth Amendment by applying the balancing test in *Mathews v. Eldridge*[51] and found the county's procedures wanting.[52] In particular, the court explained that the "only check" on clerical errors (errors that could result in unlawful pretrial detention) was "protestation by the prisoner, his family, or his lawyer," which created an "enormous" risk of an erroneous deprivation of liberty by the county's then-existing policy.[53]

Finally, the *Oviatt* panel determined that the county sheriff was a "final policymaker" with respect to internal procedures at the county detention center.[54] It likewise held that there was a policy of "inaction" in effect at the detention center of failing "to take any action to alleviate the problem of detecting missed arraignments," which policy could implicate municipal liability if it "evidenced a deliberate indifference" to the plaintiff's constitutional rights.[55] It additionally held that the jury had reasonably found that the policy did in fact amount to "deliberate indifference" to the plaintiff's (and other detainees') constitutional rights.[56]

---

[50] *Id.* at 1475.
[51] 424 U.S. 319, 335 (1976).
[52] *Oviatt*, 954 F.2d at 1475-77.
[53] *Id.* at 1476.
[54] *Id.* at 1477.
[55] *Id.*
[56] *Id.* at 1478 (citations omitted).

## C.    Official Capacity Claims

Alford's case is immediately distinguishable from *Oviatt* because his allegations primarily assert *individual* liability for Defendants' purported inaction in response to his requests for relief.  There is only one portion of his amended complaint where he mentions existence of a policy at MCCF.  In paragraph 12, Alford asserts that his late arraignment and unlawful pretrial detention were due to "defendants['] . . . decision to maintain a policy of inaction that . . . did not detect missed arraignments and trials."[57]  Alford further alleges that Defendants' "minimalist approach to jail procedures and court procedures" violated his Fourteenth Amendment rights.[58]

Alford does not name Monroe County as a defendant, but he does sue each Defendant in his or her official capacity, which is akin to suing the municipality itself.[59]  To assert a Section 1983 claim against Monroe County by way of an official capacity claim against a county employee, Alford must identify a policy or custom fairly attributable to the municipality that caused him constitutional injury.[60]

It is debatable whether Alford has plausibly alleged an unconstitutional policy via the cursory, above-mentioned allegations.  Unlike in *Oviatt*, Alford

---

[57]  Doc. 73 ¶ 12.
[58]  *Id.*
[59]  *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 n.55 (1978).
[60]  *Id.* at 690-91.

11

provides few details about MCCF's purported policy and instead appears to be parroting the language of the *Oviatt* opinion. Assuming that his minimal allegations of "inaction" at MCCF are sufficient to implicate a policy, Alford has failed to plausibly plead facts showing that most of the named Defendants are decisionmakers endowed with authority to promulgate or establish an official custom or policy.[61]

As to defendant Baylor, the only allegation in the amended complaint (beyond vague generalities that she "is legally responsible for the overall operation" of MCCF as the Director), is that she is "responsible to answer grievances at [the first] level."[62] Neither allegation is sufficient to state an official capacity claim against Baylor: the first is too vague and sounds merely in *respondeat superior* liability, and the second does not show any type of decision-making authority. The same result follows for defendant Armond. Alford pleads, in conclusory fashion, that Armond is "legally responsible for the overall operation of inmates" and for responding to first-level grievances,[63] but these allegations do not implicate decisionmaking authority or promulgation of an unconstitutional policy.

---

[61] *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) (explaining that a decision to adopt a particular course of action made by the "government's *authorized decisionmakers*" represents an act of official government policy (emphasis added)); *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009) (noting that plaintiff failed to "allege conduct by a municipal decisionmaker" in his attempt to assert municipal Section 1983 liability).
[62] Doc. 73 ¶ 4.
[63] *Id.* ¶ 6.

As to defendant Warden, Alford alleges that Warden is responsible for keeping track of "all confined and their court appearances" and that he is "legally responsible for the overall operation of the court docket sheets/entries."[64] Again, these allegations do not directly or inferentially demonstrate that Warden had decisionmaking authority to adopt or create an unconstitutional municipal policy or that he in fact adopted or created such a policy.

The only named Defendant against which Alford has plausibly stated an official capacity claim is defendant Haidle, the warden at MCCF. Although Alford does not so specify, it can be inferred that Haidle, as warden, had decisionmaking authority to establish policy at MCCF and could be responsible for creating or adopting "a policy of inaction that . . . did not detect missed arraignments and trials."[65] The deficient official capacity claims against Baylor, Armond, and Warden, on the other hand, will be dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

### D. Individual Capacity Claims

Alford also seeks individual liability for each Defendant. To plausibly plead a wrongful detention claim, a plaintiff must allege three elements: (1) "a prison official had knowledge of" the plaintiff's concern "and thus of the risk that unwarranted punishment was being, or would be, inflicted"; (2) the prison official

---

[64]  *Id.* ¶¶ 7, 11.
[65]  *Id.* ¶ 12.  The Court employs this liberal construction only because Alford is a *pro se*, incarcerated plaintiff.  *See Dooley*, 957 F.3d at 374.

13

"either failed to act or took only ineffectual action under circumstances indicating that his or her response to the problem was a product of deliberate indifference to the plaintiff's plight"; and (3) there was a "causal connection between the official's response to the problem and the infliction of the unjustified detention."[66] Circumstances that are relevant to assessing these three elements include "the scope of the official's duties and the role the official played in the life of the prison."[67]

The gravamen of Alford's individual liability claims is that he alerted the prison-official Defendants through the grievance process to his alleged lack of arraignment and prolonged pretrial detention and received no relief.[68] He claims that they failed to act, failed to investigate, and merely told him to seek advice from his legal team.[69] These allegations satisfy the pleading requirements of a wrongful pretrial detention claim. According to Alford, he alerted prison officials

---

[66] *Montanez v. Thompson*, 603 F.3d 243, 252 (3d Cir. 2010) (quoting *Sample*, 885 F.2d at 1110). As noted above, Alford's wrongful pretrial detention claims fall under the Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment's prohibition against cruel and unusual punishment. It does not appear, however, that the Third Circuit has addressed such a Fourteenth Amendment claim in a precedential decision. *See Wharton v. Danberg*, 854 F.3d 234, 246-47 (3d Cir. 2017) (noting that "each of our over-detention cases involved convicted and sentenced inmates"). Nevertheless, contrary to other types of constitutional torts where analysis under the Fourteenth or Eighth Amendment may implicate a significant difference (for example, a conditions-of-confinement claim), a claim of prolonged unjustified pretrial detention and one of prolonged unjustified post-conviction incarceration raise similar liberty interests and notice-to-defendant concerns. Accordingly, there does not appear to be strong justification for applying a different standard, and Alford provides none. Alford, in fact, relies on *Sample v. Diecks* in his briefing. *See* Doc. 83-1 at 5, 6.
[67] *Montanez*, 603 F.3d at 252 (citing *Sample*, 885 F.2d at 1110).
[68] Doc. 73 ¶ 10.
[69] *Id.*

14

to the specific issue, they failed to take any action beyond telling him to talk to his attorney, and their inaction caused him to remain in pretrial detention without a timely arraignment and past the 180 days permitted by Rule 600(B)(1).

As to defendant Warden, Alford's allegations fall short. Alford contends that he filed a petition for a writ of habeas corpus and a motion for relief under Rule 600(D) and Warden "ignored" his filings and did not "file [them] on the docket sheet."[70] But Alford's claims are frivolous in light of the public docket and Pennsylvania's prohibition on hybrid representation. Alford's criminal docket establishes that his habeas petition and motion for relief under Rule 600(D) were received, noted on the docket, and forwarded to counsel.[71] But because Alford was represented by an attorney at that time, Pennsylvania law barred court consideration of these *pro se* filings and they are essentially "legal nullities."[72] The Court further notes that Warden was not a prison official and he played no "role"

---

[70] *Id.* ¶ 11.
[71] *See Commonwealth v. Alford*, No. CP-45-CR-0000929-2020 (Pa. Ct. Com. Pl., Monroe Cnty.).
[72] *See Commonwealth v. Ellis*, 626 A.2d 1137, 1141 (Pa. 1993) (explaining that hybrid representation in criminal proceedings is not permitted); *Commonwealth v. Williams*, 241 A.3d 353, 354 n.1 (Pa. Super. Ct. 2020) (explaining that "hybrid representation is not permitted in the Commonwealth," and that Pennsylvania courts "will not accept a *pro se* motion while [a defendant] is represented by counsel"; rather, "when a counseled defendant files a *pro se* document, courts do not act on the filing, but instead note it on the docket and forward it to counsel pursuant to PA. R. CRIM. P. 576([a])(4)." Rule 576(a)(4) states, " In any case in which a defendant is represented by an attorney, if the defendant submits for filing a written motion, notice, or document that has not been signed by the defendant's attorney, the clerk of courts shall accept it for filing, time stamp it with the date of receipt and make a docket entry reflecting the date of receipt, and place the document in the criminal case file. A copy of the time stamped document shall be forwarded to the defendant's attorney and the attorney for the Commonwealth within 10 days of receipt." PA. R. CRIM. P. 576(a)(4).

in the "life of the prison."[73]  Alford's additional allegation, that Warden "is to keep track of all confined and their court appearances," is both conclusory and lacks plausibility.  Consequently, Alford's individual capacity claim against Warden will be dismissed.

## III.  CONCLUSION

Based on the foregoing, the Court will grant in part and deny in part Defendants' motion (Doc. 79) to dismiss.  This case shall proceed only on Alford's official capacity Fourteenth Amendment due process claim against Haidle and his individual capacity Fourteenth Amendment due process claims against Baylor, Armond, and Haidle.  An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[73] *Montanez*, 603 F.3d at 252 (citing *Sample*, 885 F.2d at 1110).